IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANIEL MCSORLEY,                                              CV. 06-1120-PK
                     Plaintiff,

v.                                                           FINDINGS AND
                                                             RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,
                    Defendant.

_____

PAPAK, Magistrate Judge:

INTRODUCTION

Plaintiff Daniel McSorley ("McSorley") brings this action for judicial review of a final

decision of the Commissioner of the Social Security Administration ("Commissioner") denying

his application for Social Security disability insurance benefits ("DIB") under Title II and

supplemental security income ("SSI") under Title XVI of the Social Security Act.  This court has

jurisdiction under 42 U.S.C. § 405(g).   For the reasons set forth below, this court recommends

remanding this case for further administrative proceedings consistent with this opinion.

BACKGROUND

McSorley was 51 years old at the time of the hearing.  He was 5 feet, 11 inches tall and weighed approximately 280 pounds.  He completed the eighth grade and subsequently earned his GED.  He worked in the past as a van driver and delivering newspapers in bulk for redelivery.

McSorley alleges disability based on a stroke, which is also referred to as cerebrovascular accident ("CVA") throughout the record.  AR 74.[1]  He claims the ongoing effects of the stroke cause the following symptoms:  confusion, dizziness, inability to think clearly, slurred speech, loss of strength, and poor balance.  AR 74, 331, 332, 338.  At various time, McSorley was diagnosed with aphagia,[2] dysarthritic speech,[3] vertigo, diabetes, hypertension, hyperlipidimia, obesity, a cognitive disorder, and depression.  McSorley did not return to his work delivering bundles of newspapers after his stroke.  He testified that he does not think he could do that job anymore because he loses his balance easily, has lost some of his strength, and is unsure whether he would be able to drive distances to pick up the newspapers or push the pallets holding the newspapers.  AR 331.  He testified that he does not think he could work at a job for eight hours a day because he has to sit down when he gets dizzy, and because he believes he is twenty times slower than other workers.  AR 340-41.

McSorley protectively filed applications for DIB and SSI on March 3, 2003, alleging disability beginning January 28, 2003.  The application was denied initially and upon

---

[1] Citations are to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

[2] Aphagia is an inability to eat.

[3] Dysarthria is speech that is characteristically slurred, slow and difficult to produce. Dysarthritic speech can be caused by a stroke.

Page 2 - FINDINGS AND RECOMMENDATION

reconsideration.  On July 25, 2005, a hearing was held before an Administrative Law Judge

("ALJ").  At that hearing, the ALJ ordered an additional neuropsychological evaluation for

McSorley and the hearing was continued until January 10, 2006.  In a decision dated February

15, 2006, the ALJ found McSorley not disabled and therefore not entitled to benefits.  On June

15, 2006, the Appeals Council denied McSorley's request for review, making the ALJ's decision

the final decision of the Commissioner.  McSorley seeks judicial review of the Commissioner's

decision, and requests a remand for benefits or, in the alternative, further proceedings.  The

Commissioner argues that the ALJ's decision should be affirmed, but concedes that at least one

error was made by the ALJ at step five that may warrant a remand for further proceedings.

## STANDARDS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her

disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122

(1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan,

924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole.  42

U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews, 53

F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation."  <u>Andrews</u>, 53 F.3d at 1039-40.

I the Commissioner's decision cannot be sustained, the decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir.), <u>cert. denied</u>, 531 U.S. 1038 (2000).  "The proper course, except in rare circumstances, is to remand to the agency for further investigation or explanation."  <u>Moisa v. Barnhart</u>, 367 F.3d 882, 886-87 (9th Cir. 2004), citing <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002) (per curiam).

## MEDICAL RECORDS

The medical records accurately set forth McSorley's medical history as it relates to his claims.  The court has carefully reviewed all the records, and the parties are familiar with them.  Accordingly, only a brief summary appears below.

On or about February 4, 2003, McSorley had a stroke.  Laboratory tests including an MRI, an MRA,[4] and a cerebral arteriogram confirmed this medical finding.  AR 140, 142, 147, 149.  On admission to the hospital, McSorley was noted for having an abnormal gait, dysarthria, dysphagia,[5] nystagmus,[6] abnormal finger-to-nose response, and right arm drift.  AR 140.  In February 2005, chart notes indicated that McSorley continued to have slow and slurred speech,

---

[4] An MRA is a magnetic resonance angiogram.

[5] Dysphagia is difficulty in swallowing.

[6] Nystagmus is rapid, rhythmic, repetitious, involuntary eye movements.

and mild expressive aphagia.  AR 193.

Dr. Ogisu performed a comprehensive neurological examination in August 2003 and found that McSorley's speech remained mildly dysarthric and that he was able to follow simple commands well and three-step commands without error.  AR 186.  Dr. Ogisu also found that McSorley's movements were a bit slow, that he tilted when turning during heel walking, and that his higher order balance may have been mildly impaired.  AR 187.  Dr. Ogisu also found that McSorley's speech was easily understood in a quiet room, but may be difficult to understand in noisy conditions.  187.  Dr. Pluedeman, McSorley's treating physician, noted ongoing dysarthria and aphasia[7] in August 2003.  AR 213.  Dr. Brischetto performed a neuropsychological evaluation in September 2005 and found mild dysarthria, and that McSorley could follow single and multi-step commands without difficulty.  McSorley scored low-average to average on most standardized tests administered by Dr. Brischetto and she assessed him with a mild cognitive disorder NOS, mild depression and a GAF of 65-70.[8]

McSorley had a long history of diabetes, hypertension, hyperlipidemia,[9] and obesity.  McSorley was treated at various times with Glipizide, Lisinopril, Dipyridamole, Metformin, Hydrochlorot, Actos, Lipitor, Cholestyram, Aggrenox, Glucotrol XL, Accupril, Glucophage, and Avandia among many others.  His diabetes and hyperlipidemia were mostly under control with

---

[7] Aphasia is a defect or loss of the power of expression by speech, writing, or signs, or of comprehending spoken or written language

[8] According to the DSM-IV, a Global Assessment Functioning score ("GAF") of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social occupational, or school functioning (e.g., occasional truancy or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

[9] Hyperlipidemia is high fat levels in the blood.

Page 5 - FINDINGS AND RECOMMENDATION

medication. McSorley, however, was forgetful about taking his medication so his conditions were not always well-controlled.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999):

Step One.  The ALJ determines whether claimant is engaged in substantial gainful activity.  If so, claimant is not disabled.  If claimant is not engaged in substantial gainful activity, the ALJ proceeds to evaluate claimant's case under step two.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two.  The ALJ determines whether claimant has one or more severe impairments significantly limiting him from performing basic work activities.  If not, the claimant is not disabled.  If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three.  The ALJ next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration ("SSA") regulations found at 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, claimant is disabled.  If claimant's impairment does not meet or equal one listed in the regulations, the ALJ's evaluation of claimant's case proceeds under step four.  20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four.  The ALJ determines whether claimant has sufficient residual functional capacity ("RFC") despite the impairment or various impairments to perform work he or she has

Page 6 - FINDINGS AND RECOMMENDATION

done in the past.  If so, claimant is not disabled.  If claimant demonstrates he or she cannot do work performed in the past, the ALJ's evaluation of claimant's case proceeds under step five.  20 C.F.R. §§ 404.1520(e), 416.920(e).

Step Five.  The ALJ determines whether claimant is able to do any other work.  If not, claimant is disabled.  If the ALJ finds claimant is able to do other work, the ALJ must show a significant number of jobs exist in the national economy that claimant can do.  The ALJ may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the ALJ demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled.  If the ALJ does not meet this burden, claimant is disabled.  20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At step five, the burden shifts to the ALJ to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

THE ALJ'S FINDINGS

At step one, the ALJ found that McSorley had not engaged in substantial gainful activity at any time since the alleged onset date.  AR 18.  This finding is not in dispute.  At step two, the ALJ found that Ybarra had the following severe impairments:  a mild cognitive disorder and status post cerebral vascular accident.  Id.  This finding is in dispute.  At step three, the ALJ

Page 7 - FINDINGS AND RECOMMENDATION

found that none of McSorley's impairments met or equaled a listing.  AR 20.  This finding is in dispute.

In determining residual functional capacity ("RFC"), the ALJ found that McSorley had the capacity to engage in light levels of work that did not require more than occasional public speaking.  AR 20.  The ALJ assessed no other limitations.  This finding is in dispute.

At step four, the ALJ found that McSorley was unable to perform his past relevant work.  AR 21.  This finding is not in dispute.  At step five, utilizing the testimony of a vocational expert ("VE"), the ALJ found that McSorley could perform the jobs of electronics worker and product electronics assembly.  AR 21.  This finding is in dispute.

### DISCUSSION

McSorley contends that the ALJ erred by:  (1) improperly rejecting the opinion of treating physician Carin Pluedeman, M.D.; (2) making inadequate findings at step two; (3) failing to consider McSorley's impairments in combination and incompletely analyzing whether those impairments met or equaled a listing at step 3; (4) failing to properly assess McSorley's RFC; (5) improperly rejecting McSorley's testimony; and (6) improperly rejecting lay witness evidence.

Opinions of Carin Pluedeman, M.D.

Beginning in August 2003, Carin Pluedeman, M.D., was McSorley's treating physician.  AR 213.  The ALJ considered and discredited the opinions of Dr. Pluedeman, specifically opinions by Dr. Pluedeman that McSorley's stroke caused cognitive and speech deficits such that McSorley was disabled.  AR 19-20.  McSorley contends that the ALJ improperly rejected Dr. Pluedeman's opinions.

Page 8 - FINDINGS AND RECOMMENDATION

The ALJ is responsible for resolving conflicts and ambiguities in the medical testimony. See Magallenes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). In evaluating the medical evidence, the ALJ is not required to find a physician's opinion conclusive as to a physical condition or as to the ultimate issue of disability. See Morgan v. Commissioner, 169 F.3d 595, 600 (9th Cir. 1999). In particular, the ALJ is not bound to a physician's opinion of a claimant's disability or claimant's employability, because these issues are reserved to the Commissioner. 20 C.F.R. § 404.1527(e). As the court explained in Harman, 211 F.3d at 1180, a physician's opinion of disability is not a legal opinion establishing disability under the Social Security Act because the Commissioner's finding involves a medical and vocational component.

In the Ninth Circuit, "where [a] treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If a treating physician's medical opinion is contradicted by another physician, the Commissioner may reject the opinion by providing "specific and legitimate reasons" supported by substantial evidence in the record. Morgan, 169 F.3d at 600-601.

Of the many chart notes and records of examinations of McSorley by Dr. Pluedeman, only two discuss medical information that is directly relevant to McSorley's argument here. On March 22, 2004, Dr. Pluedeman wrote a three-sentence letter: "Dan McSorley is a patient of mine who has had a stroke previously and is followed for diabetes, cholesterol and hypertension. His stroke left him with several deficits of speech and cognition. In my opinion, he is totally and permanently disabled from performing any type of gainful employment." AR 203. On July 12. 2005, Dr. Pluedeman completed a form provided to her by McSorley's attorney in a check-the-

box with explanations format. AR 278-80. On that form, Dr. Pluedeman described McSorley as suffering from "global brain slowing of cognitive and motor functions" and as having "cognitive and memory impairment" and "difficulty finding, speaking and writing words". AR 278. Dr. Pluedeman rated McSorley's concentration, persistence or pace as extremely affected by his impairments and noted: "He is much more impaired in the areas of cognition and memory with behavioral difficulties due to his stroke than any physical impairments. I do not expect him to be capable of working a normal job." AR 280.

The ALJ dismissed Dr. Pluedeman's opinions noting that they were conclusory, not adequately supported by medically acceptable clinical and diagnostic techniques, and contradicted by other evidence of record. This court agrees. While Dr. Pluedeman's medical records provide substantial evidence of her treatment of McSorley's diabetes, hypertension and high cholesterol, there is no evidence in her treatment of McSorley to support her statements as to his extreme cognitive impairments. An ALJ may reject a medical opinion that is brief, conclusory, and inadequately supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Dr. Pleudeman's opinions were not sufficiently detailed, and not supported by clinical findings or diagnostic tests. Also, a physician's opinion of disability is not a legal opinion establishing disability under the Social Security Act because that finding involves both a medical and a vocational component. See Harman, 211 F.3d at 1180. Thus Dr. Pluedeman's conclusions as to McSorley's ability to do any type of "gainful employment" or work at "a normal job" are findings reserved to the ALJ. The ALJ correctly noted that Dr. Pluedeman fails to identify objective evidence of specific functional limitations and simply provides conclusions rather than medical opinions. AR 19. Physicians' opinions that are explained are entitled to

more weight than those that are not.  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001);

see also 20 C.F.R. § 404.1527(d)(3).   Finally, Dr. Pluedeman's statements as to the severity of

McSorley's cognitive impairments are contradicted by the two neurological examinations

performed by Dr. Ogisu and Dr. Brischetto, the latter finding that McSorley had only a mild

cognitive disorder.  AR 291.  Because the ALJ provided specific and legitimate reasons for

rejecting Dr. Pluedeman's unsupported medical opinions, the ALJ's finding should be affirmed.

Findings at Step Two

      McSorley contends that the ALJ erred in failing to evaluate whether the following

impairments were severe at step two:  atherosclerotic disease,[10] depression, and obesity.[11]

      An impairment is severe for the purposes of step two of the evaluation process if it

significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. §

416.920(c).  Basic work activities are the abilities and aptitudes necessary to do most jobs.  Id. at

§ 404.1521(b).  These include physical functions, such as seeing, hearing, speaking, walking,

standing and sitting, and mental functions, such as understanding, remembering, using judgment

and responding appropriately to work situations.  20 C.F.R. §§ 404.1521(b), 416.921(b).

      An impairment can be found "not severe" only if it is a minor abnormality that has no

more than minimal effect on the claimant's ability to work.  Smolen v. Chater, 80 F.3d 1273,

1290 (9th Cir. 1996).  The inquiry at step two is a de minimis screening tool to dispose of

---

    [10] Atherosclerosis is the build-up of a waxy deposit on the inside of blood vessels.
Atherosclerosis is a form of arteriosclerosis, a condition in which the arteries become hard and
less flexible.

    [11] In his reply brief, McSorley adds diabetes and hypertension to the list of impairments
the ALJ failed to consider at step two.

groundless claims.  Id.  The burden to show a medically determinable severe impairment is on

the claimant.  Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  A severe impairment must be

shown by medically acceptable clinical and laboratory diagnostic techniques – established by

signs, symptoms and laboratory findings, not only by statements of the claimant.  20 C.F.R. §

404.1508.

McSorley argues that the ALJ made inadequate findings at step two by failing to evaluate

whether atherosclerotic disease, depression, diabetes, hypertension, and obesity were severe

impairments.  This court agrees.  The ALJ failed to discuss these impairments alone or in

combination.  Because the record shows that McSorley had a history of these conditions, the

ALJ was required to consider all these conditions in his findings at step two.  The ALJ's failure

to evaluate these impairments and provide reasons for rejecting these impairments as non-severe

makes it impossible for this court to determine the basis of his conclusions, or to evaluate

whether those conclusions were based on substantial evidence of record.  See Marcia v. Sullivan,

900 F.2d 172, 176 (9th Cir. 1990) (remanding based on the court's inability to ascertain what

requirements the ALJ applied).  In the absence of these required findings by an ALJ, the

Commissioner in his brief may not point to evidence in the record that would have supported the

ALJ's determination of the non-severity of McSorley's impairments in an attempt to bolster the

ALJ's lack of findings.  Such post hoc reasoning is impermissible.  See SEC v. Chenery Corp.,

332 U.S. 194, 196 (1947) (court's role is to determine the adequacy of the agency's actual basis

for its decision, not the adequacy of agency's legal counsel's post hoc rationalizations); see also

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054 (9th Cir. 2005)

(court is constrained to review the reasons the ALJ asserts).  The ALJ erred in failing to discuss

Page 13 - FINDINGS AND RECOMMENDATION

McSorley's impairments that may be have been severe singly or in combination.[12]  This case should be remanded for evaluation of McSorley's impairments of atherosclerotic disease, depression, obesity, diabetes, and hypertension at step two.

Consideration of Impairments in Combination at Step Three

McSorley contends that the ALJ erred in failing to consider all of McSorley's impairments in combination and in failing to analyze whether, when considered together, McSorley's impairments met or equaled a listing.

At step three, to meet one of the impairments listed in the SSA regulations, a claimant must establish that she meets each characteristic of that impairment.  See 20 C.F.R. §§ 404.1525, 416.925.  To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment "most like" the claimant's impairment.  See §§ 404.1526(a); 416.926(a).  If the claimant has more than one impairment, the Commissioner must determine whether the combination of impairments is medically equal to any listing.  §§ 404.1526(a), 416.926(a); Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001).  A finding of equivalence must be based on medical evidence only.  §§ 404.1529(d)(3), 416.929(d)(3); Lewis, 236 F.3d at 514.

Here, McSorley does not specify which listing his impairments in combination may have met.  McSorley mentions section 12.02, Organic Mental Disorders, and provides a laundry list of his multiple impairments, but does not offer any specific evidence as to how his impairments in combination could equal a listing.  McSorley cites to Marcia v. Sullivan, 900 F.2d 172 (9th Cir.

---

[12] As explained below, the ALJ's failure to consider whether McSorley had other severe impairments at step two may also impact the ALJ's formulation of McSorley's RFC after step three.

1990), for his argument that the ALJ erred in failing to analyze whether McSorley's impairments in combination were equivalent to a listing.  However, under more current Ninth Circuit law, an ALJ is not required to discuss the combination of a claimant's impairments or compare them to any equivalent listing unless the claimant  presents evidence that may establish equivalence. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001).  As the court explained in Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005), the Lewis opinion distinguished Marcia when the court determined that the ALJ's failure to consider equivalence was not reversible error because the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing.  Because McSorley wrongly argues that Marcia controls our analysis of the adequacy of the ALJ's discussion of combined impairments, this court recommends that the ALJ's finding at step three with regard to the McSorley's impairments in combination be affirmed.  In the event that additional impairments are assessed on remand, the step three finding will also have to be reconsidered.

Assessment of Residual Functional Capacity ("RFC")

McSorley contends that the ALJ erred in assessing his RFC and that the flawed RFC could not form a legitimate basis for the hypothetical posed to the VE at McSorley's hearing. This court agrees.  A claimant's RFC assessment is a determination of what the claimant can still do despite his physical, mental and other limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  In determining a claimant's RFC, an ALJ must assess all the evidence including medical reports, and the claimant's and others' descriptions of limitations to determine what capacity the claimant has for work despite his impairments.  Id.  Social Security regulations define RFC as the

"maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

In assessing McSorley's RFC, the ALJ concluded that McSorley could engage in light levels of work that did not require more than occasional public speaking. AR 20. However, the ALJ failed to consider any limitations related to McSorley's dizziness, difficulties with balance, slow movement, speech difficulties, and problems with using his hands to write. These limitations were documented in the medical record and confirmed by McSorley's testimony and the testimony of lay witnesses. DDS examining physician Dr. Ogisu found that McSorley's higher order balance may have been mildly impaired by his stroke, that his movements were slow, and that he may be difficult to understand under noisy conditions. AR 187. With regard to McSorley's speech difficulties, DDS reviewing psychologist Dr. Rethinger recommended in his functional capacities assessment that McSorley work in a non-loud noise environment. AR 232. DDS examining neurologist Dr. Brischetto also found that McSorley was slow in processing instructions, and may have motor slowing using a pen/pencil. AR 290, 292. Treating physician Dr. Pluedeman diagnosed McSorley with vertigo, and also opined that McSorley should never climb, and should only occasionally stoop, bend, and reach. AR 245, 279. Dr. Pluedeman also opined that McSorley skill's may not allow for more than occasional fingering/fine manipulation. AR 279. McSorley also testified to dizziness, balance problems and overall slowness in functioning. AR 331, 341. Lay testimony from McSorley's father and his step-sister also confirmed that his actions were slower after his stroke, he had difficulty writing legibly, he was often dizzy, he had balance problems, and that his speech was impacted. AR 131-33. While some of these limitations were based on non-severe impairments, under Social

Page 16 - FINDINGS AND RECOMMENDATION

Security regulations, the ALJ must consider all of a claimant's medically determinable impairments, including medically determinable impairments that are not "severe" when assessing residual functional capacity. 20 C.F.R. § 404.1545(a)(2). The ALJ's failure to address McSorley's well-documented limitations in formulating his RFC was error.

McSorley contends that the ALJ's erroneous omission of possible severe impairments at step two and limitations in formulating his RFC caused deficiencies in the hypothetical posed to the VE at step five. This court agrees. Because the ALJ failed to accurately assess some of the limitations of McSorley's post-stroke condition in formulating his RFC and failed to provide accurate limitations to the VE, the ALJ's finding at step five is flawed and the VE's testimony can not constitute substantial evidence to support the ALJ's determination that McSorley is not disabled. See Russell v. Sullivan, 930 F.2d 1443, 1445 (9th Cir. 1991) (explaining that hypothetical questions must set out all claimant's limitations and assumptions in the hypothetical must be supported by the record for VE's opinion to have evidentiary value). After reconsideration of severe impairments at step two and reformulation of McSorley's RFC, this court recommends that the ALJ make a new finding at step five.

McSorley's Testimony and Credibility

McSorley contends that the ALJ improperly rejected his testimony. The Commissioner does not respond to this argument. If there is medical evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear

and convincing.'" <u>Lester</u>, 81 F.3d at 834 (citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u> In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. <u>Smolen</u>, 80 F.3d at 1284 (citations omitted). An ALJ is not required to believe every allegation made by a claimant or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. 423(d)(5)(A). <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989).

Here, the ALJ found McSorley "generally credible to the extent [that] he does have medically determinable impairments that do cause vocationally relevant limitations, but not to the extent, he is completely disabled by them." AR 20. The ALJ goes on to argue that McSorley's deficits in physical and mental activities are not supported by objective medical records, and that McSorley was able to engage in criminal activities during the period in question which undermined his credibility. Under the standard laid out above, the ALJ's reasons for discrediting the severity of McSorley's symptoms were not clear and convincing. Also, McSorley testified that he was wrongly accused of at least one crime he committed, and the record is unclear as to whether any other criminal activity would be too remote in time to be probative of McSorley's current application for benefits. The record showed no evidence that McSorley was malingering, and medical evidence does show that McSorley had legitimate underlying impairments. Because this court recommends a remand for reconsideration of findings at step two regarding severe impairments which implicate the remaining steps in the

Page 18 - FINDINGS AND RECOMMENDATION

sequential evaluation process, McSorley's testimony regarding his alleged impairments and the limitations those impairments cause should also be reevaluated.

Lay Witness Testimony

McSorley argues that the ALJ wrongly dismissed the lay witness testimony of Joseph McSorley ("Mr. McSorley"), the claimant's father, and erred in failing to mention or address the lay witness testimony of Susie Doran, McSorley's step-sister.  Lay testimony as to a claimant's symptoms is competent evidence which the ALJ must take into account.  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) and (e), 416.913(d)(4) and (e). Where an ALJ disregards lay testimony, he must provide germane reasons for doing so.  Dodrill, 12 F.3d at 919.  Lay witnesses are competent to testify as to a claimant's symptoms or how an impairment affects the ability to work and therefore "cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (friends and relatives in a position to observe a claimant's symptoms and daily activities can provide competent evidence to support medical opinions, or show how an impairment affects claimant's ability to work).  In a 2005 Ninth Circuit decision, the court declined an invitation by the Commissioner to find harmless error where an ALJ failed to properly discuss competent lay testimony favorable to the claimant.  See Stout, 454 F.3d at 1056.

Here, the ALJ failed to discuss Doran's opinion in its entirety.  Doran testified that McSorley generally was slower since his stroke, that he had trouble writing legibly, that he was no longer able to work on machines as he used to, that he got dizzy regularly, that his speech was impaired after the stroke, and the he had trouble following complex instructions.  AR 131.  The ALJ's failure to discuss this competent lay testimony was error.

Mr. McSorley testified that his son lives on a trailer on his property, and that Mr.

McSorley took his son to the hospital after the stroke.  AR 132.  Mr. McSorley further testified

that his son was no longer able to work on cars or other machines because he would take them

apart and not be able to put them back together, that he could no longer drive a truck, that he was

difficult to understand, that he lost his balance often such that he could no longer ride and had to

sell his motorcyle, that he would get dizzy, and that he was slower after his stroke.  AR 132-33.

With regard to Mr. McSorley, the ALJ discredited his testimony:  "(Mr. McSorley) is not

knowledgeable in the medical and/or vocational fields and thus is unable to render opinions on

how the claimant's mental and physical impairments impact his overall abilities to perform basic

work activities at various exertional levels."  AR 21.  Here, the ALJ wrongfully discredited Mr.

McSorley by judging the competency of his testimony based on an improper standard.  Mr.

McSorley was not testifying as a physician or a VE and his testimony should not have been

judged by that standard.  As a lay witness, Mr. McSorley observations were valuable.  The ALJ

erred in dismissing Mr. McSorley's competent testimony and on remand this evidence should be

properly considered.

CONCLUSION

The ALJ erred in  making inadequate findings at step two, failing to properly assess

McSorley's RFC, improperly rejecting McSorley's testimony, and improperly rejecting lay

witness testimony.

For the foregoing reasons, this court recommends remanding this case pursuant to

sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this

opinion.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District

Judge for review.  Objections, if any, are due July 24, 2007.  If no objections are filed, review of

the Findings and Recommendation will go under advisement on that date.  If objections are filed,

a response to the objections is due fourteen days after the date the objections are filed and the

review of the Findings and Recommendation will go under advisement on that date.

Dated this 10th day of July, 2007.


_____/s/ Paul Papak_____
Honorable Paul Papak
United States Magistrate Judge


Page 21 - FINDINGS AND RECOMMENDATION